UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRYL MINGO,

          Plaintiff,

   v.

ERIC AUGUSTYN, *City of Buffalo Police
Officer*, *et al.*,

          Defendants.

_____

19-CV-211-LJV-MWP
DECISION & ORDER

On February 17, 2019, the plaintiff, Darryl Mingo, commenced this action under

42 U.S.C. §§ 1981, 1983, and 1985, as well as New York state law.  Docket Item 1.

The case was referred to United States Magistrate Judge Hugh B. Scott for all

proceedings under 28 U.S.C. § 636(b)(1)(A) and (B) on April 17, 2019, Docket Item 8,

and reassigned to United States Magistrate Judge Marian W. Payson on March 5, 2021,

Docket Item 24.  In the meantime, on October 30, 2020, defendants City of Buffalo, City

of Buffalo Police Officer Eric Augustyn, City of Buffalo Police Officer Joseph Petronella,

City of Buffalo Police Officer Patrick Baggott[1], and City of Buffalo Peace Officer John

Doe (the "City Defendants") moved for summary judgment and for judgment on the

pleadings.  Docket Item 17.  On December 14, 2020, Mingo responded to both motions,

Docket Item 21, and on December 28, 2020, the City Defendants replied, Docket Item

22.

_____

[1] Although Baggott is named as "City of Buffalo Police Officer Patrick Baggot" in
the amended complaint, *see* Docket Item 3, his name apparently is spelled "Baggott,"
*see* Docket Item 17-7.  The Clerk of the Court shall correct the case caption
accordingly.

On June 16, 2021, Judge Payson issued a Report and Recommendation ("R&R") finding that the City Defendants' motions should be granted in part and denied in part. Docket Item 25.  More specifically, Judge Payson recommended dismissing Mingo's claims against John Doe, his section 1983 and state law malicious prosecution claims against Petronella and Baggott, his section 1983 due process claim, his section 1985 claim, and his claim for intentional infliction of emotional distress.  *Id.*  Judge Payson recommended denying the City Defendants' motion for summary judgment and judgment on the pleadings on Mingo's section 1983 and state law false arrest/false imprisonment claims against Augustyn, Petronella, and Baggott, as well as his section 1983 and state law malicious prosecution claims against Augustyn.  *Id.*

On June 30, 2021, the City Defendants objected to the R&R.  Docket Item 26. They argue that Judge Payson first erred by considering two affidavits that Mingo submitted in opposition to their motions; they also argue that Judge Payson erred by finding that questions of fact precluded dismissal of Mingo's false arrest/false imprisonment and malicious prosecution claims.  *Id.*  In addition, they argue that Judge Payson erred in not granting summary judgment on Mingo's section 1981 claim.  *Id.* Mingo responded to the City Defendants' objections on July 22, 2021, Docket Item 28, and the City Defendants replied on August 3, 2021, Docket Item 30.[2]

---

[2] In his response to the City Defendants' objections, Mingo says that "[he] does not object to any of [Judge Payson's] recommendations . . . relative to the outcome of his claims" but nevertheless "submit[s] that [Judge Payson] erred in not considering the video that he submitted both as an exhibit of his amended complaint and as an exhibit to his opposition papers."  Docket Item 28 at 3.  In response to the City Defendants' motions, Mingo submitted a video purporting to show the July 19, 2018 altercation.  *See* Docket Item 21-5.  Judge Payson declined to consider that video because it was supported only by a declaration submitted by Mingo's counsel averring that the video

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, response, and reply; and the materials submitted to Judge Payson. Based on that *de novo* review, the Court accepts and adopts Judge Payson's recommendation to grant the City Defendants' motions in part and to deny those motions in part.[3]

---

"truly and accurately depict[ed] [the] event[]" and therefore was "not [] offered in admissible form." Docket Item 25 at 6 n.8; Docket Item 21-2 at ¶ 4.

As the City Defendants correctly note, any objections to Judge Payson's R&R were due more than three weeks before Mingo filed his response to the City Defendants' objections. *See* Docket Item 30 at 2. So Mingo waived the objection that he now presses. *See Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). And while Mingo tries to authenticate the video in his response to the City Defendants' objections, *see* Docket Item 28-1, he waived that argument by not presenting it to Judge Payson in the first instance. *See Al-Mohammedi v. City of Buffalo*, 2017 WL 163388, at *1 (W.D.N.Y. Jan. 17, 2017) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate." (alteration omitted) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988)). This Court therefore declines to consider the video submitted with Mingo's opposition, Docket Item 21-5. But that does not preclude Mingo from properly authenticating it and using it at trial.

[3] Mingo did not object to Judge Payson's recommendation to dismiss his remaining claims. *See* Docket Item 28 at 3. So this Court need not review those portions of the R&R. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). Nevertheless, this Court has reviewed the remainder of Judge Payson's R&R and agrees with her that Mingo's other claims should be dismissed.

**FACTUAL BACKGROUND**

Mingo's claims arise out of a dispute at the Tim Hortons restaurant located at 424 Main Street in Buffalo on July 19, 2018.[4]  Docket Item 17-11 at ¶ 1; Docket Item 21-1 at ¶ 1.  That morning, Mingo visited Tim Hortons, placed an order, and stepped outside while his order was being prepared.  Docket Item 17-1 at ¶ 3; Docket Item 21-1 at ¶ 3.  He reentered the restaurant a short time later; in the meantime, the restaurant had filled with other patrons.  Docket Item 17-1 at ¶ 4; Docket Item 21-1 at ¶ 4.

At this point an altercation occurred, although the parties dispute exactly why and what happened.  According to the City Defendants, Mingo began to yell at and berate the Tim Hortons staff after one employee told him that he did not have enough money for his order.  Docket Item 17-11 at ¶ 5; Docket Item 17-8 at 2-3.  They say that a Tim Hortons employee eventually asked Mingo to leave, Mingo refused, and the argument continued.[5]  *Id.*

Mingo recalls things differently.  He says that he had paid for his order before leaving the restaurant to wait outside and that he "merely walked back in and asked for [it]."  Docket Item 21-1 at ¶¶ 3-5.  And he says that he simply asked "to speak to the owner[ or ]manager" of the Tim Hortons "based on what [he] considered poor service."  Docket Item 21-6 at ¶ 2; *see also* Docket Item 21-1 at ¶ 5.

---

[4] The following facts are taken from the City Defendants' statement of undisputed material facts, Docket Item 17-11; Mingo's response to the City Defendants' statement of material facts, Docket Item 21-1; and the exhibits incorporated in those filings.  On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

[5] A Tim Hortons employee may then have called 911.  *See* Docket Item 17-8 at 3.

Both sides appear to agree that Mingo then was confronted by George Bailey, a security guard who worked in the building.  Docket Item 17-8 at 3; Docket Item 17-11 at ¶ 6; Docket Item 21-1 at ¶ 6.  Bailey apparently told Mingo that he could not "come here and just skip everyone just like that."  Docket Item 17-11 at ¶ 6; Docket Item 21-1 at ¶ 6. Mingo says that when he nevertheless reached for his order, Bailey "grabbed [him] and shoved [him] through the tables and chairs"; he says that after Bailey "grabbed" and "smacked" him, the two of them punched each other.  Docket Item 17-4 at 33, 41-42; Docket Item 17-11 at ¶ 6; Docket Item 21-1 at ¶ 6.  Mingo maintains that he "was merely defending himself" in the altercation, Docket Item 21-1 at ¶ 6, but he "admits that he cut Bailey's lip while punching him" during the skirmish, *id*. at ¶ 7.

The City Defendants and Mingo disagree about what happened after Buffalo police officers arrived on the scene.  Officer Augustyn, who was patrolling downtown Buffalo that morning on a bicycle, says that he was stopped by a bystander who "reported a fight occurring inside the Tim Hortons."  Docket Item 17-5 at ¶¶ 5-6; Docket Item 17-11 at ¶ 8; Docket Item 21-1 at ¶ 8.  According to the City Defendants, Augustyn then "entered the Tim Hortons and observed [Mingo] and Bailey arguing."  Docket Item 17-11 at ¶ 9.  After seeing that Bailey was bleeding from the mouth, Augustyn "placed [Mingo] in handcuffs while [he] began to investigate what had occurred."  Docket Item 17-5 at ¶ 8.

According to Augustyn, a witness dressed in medical scrubs then showed him a video of the altercation on her cell phone.  Docket Item 17-11 at ¶ 10; Docket Item 17-5 at ¶ 9.  Although that video showed Mingo punching Bailey, it "did not depict the beginning of the altercation."  Docket Item 17-5 at ¶ 9.  Bailey then detailed his version

of the events to Augustyn, who subsequently "decided to arrest [Mingo] for the altercation" based on "the observations of the injuries to [Bailey], [the] reports of witnesses, and the cellular phone video."  Docket Item 17-5 at ¶¶ 11-12.  Augustyn also maintains that "[a]t no time during [his] brief investigation did any witness state that [Mingo] was not the initial aggressor in the altercation."  *Id.* at ¶ 10.

Mingo, by contrast, contends that he was "arrested immediately and without investigation."  Docket Item 21-1 at ¶ 9.  According to Mingo, multiple witnesses, including the witness dressed in medical scrubs, "indicat[ed] to Augustyn that Bailey was the aggressor and that Mingo merely acted in self-defense."  *Id.* at ¶¶ 10, 12; *see also id.* at ¶ 9 (maintaining that "three individuals, including the female witness in scrubs, were indicating to Officer Augustyn that Bailey was the assaulter and that Mingo was innocent").[6]  And Mingo contends that Augustyn "did not even view the video that the lady in scrubs was trying to show to him" before Augustyn handcuffed him.  *Id.* at ¶ 9.

Officers Petronella and Baggott claim that they arrived at the Tim Hortons only after Mingo had been handcuffed and placed outside in a police vehicle.  *See* Docket Item 17-6 at ¶ 9; Docket Item 17-7 at ¶ 7.  Petronella then "transported [Mingo] to Central Booking" while Baggott followed separately.  Docket Item 17-11 at ¶ 13; Docket Item 21-1 at ¶ 13.   After arriving at "Central Booking," Mingo was searched and "placed in a restraint chair."  Docket Item 17-11 at ¶ 14; Docket Item 21-1 at ¶ 14.

---

[6] For the reasons explained below, this Court considers the affidavits referenced in Mingo's response to the City Defendants' statement of material facts.

Both sides apparently agree that at that point, Petronella's and Baggott's involvement ended.  Docket Item 17-11 at ¶ 15; Docket Item 21-1 at ¶ 15.  Augustyn completed paperwork on July 19, 2018, reflecting that Augustyn was the "arresting officer" and noting that Petronella and Baggott "assisted with [the] investigation and arrest."  Docket Item 21-7 (capitalization removed); Docket Item 17-11 at ¶ 15; Docket Item 21-1 at ¶ 15.

Augustyn signed documents charging Mingo with trespass, third-degree assault, and second-degree harassment.  Docket Item 17-9.  The assault and harassment charges were dismissed on August 29, 2018.  Docket Item 17-11 at ¶ 17; Docket Item 21-1 at ¶ 17.  And on October 11, 2018, the only remaining charge against Mingo— trespass—was dismissed on speedy-trial grounds under New York Criminal Procedure Law § 30.30.  Docket Item 17-11 at ¶ 17; Docket Item 21-1 at ¶ 17.

Less than a week later, Mingo filed a notice of claim against the City of Buffalo, Augustyn, Petronella, and Baggott.  Docket Item 17-3.  He then filed suit in this Court against the City Defendants, Bailey, and Transwestern Investment Group LLC.[7]  Docket Item 1; Docket Item 3.

## LEGAL PRINCIPLES

## I.   SUMMARY JUDGMENT

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[7] Mingo's claims against Bailey and Transwestern Investment Group LLC were dismissed by stipulation in January 2020.  Docket Item 15.  Therefore, the City Defendants are the only remaining defendants.

matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ.

P. 56(a)).  "Summary judgment is appropriate when 'there can be but one reasonable

conclusion as to the verdict,' *i.e.*, 'it is quite clear what the truth is,' and no rational

factfinder could find in favor of the nonmovant."  *Id.*  (first quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 250 (1986); then quoting *Poller v. Columbia Broadcasting

Sys., Inc.*, 368 U.S. 464, 467 (1962)).  Conversely, "[s]ummary judgment should be

denied if, when the party against whom summary judgment is sought is given the

benefit of all permissible inferences and all credibility assessments, a rational factfinder

could resolve all material factual issues in favor of that party."  *Id.*  "In deciding such a

motion, the court cannot properly make credibility determinations or weigh the

evidence."  *Id.*  "Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge."

*Anderson*, 477 U.S. at 255.

## II.   MOTION FOR JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are

closed—but early enough not to delay trial—a party may move for judgment on the

pleadings."  The standard for deciding a Rule 12(c) motion is "the same . . . standard

[that applies] to dismissals pursuant to [Rule] 12(b)(6).  Thus, [courts] will accept all

factual allegations in the [c]omplaint as true and draw all reasonable inferences in [the

plaintiff's] favor."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.    THE EXHIBITS BEFORE JUDGE PAYSON

The City Defendants first contend that Judge Payson erred in "considering the sworn statements of purported witnesses that were not disclosed pursuant to Rule 26." Docket Item 26 at 3 (capitalization removed).  In his opposition to the City Defendants' motions, Mingo included affidavits from John Chandler and Clifford Nash, two purported witnesses to the altercation.  *See* Docket Items 21-3, 21-4.  Those affidavits generally corroborate Mingo's version of events: that Mingo had paid for his order, that Bailey instigated the physical confrontation, and that other witnesses told Augustyn that he was arresting the wrong person.  *See id.*

The City Defendants told Judge Payson that she "should entirely disregard those affidavits" because Chandler and Nash "were never specifically disclosed by name as witnesses pursuant to Rule 26."  Docket Item 22 at 5.  Judge Payson declined to do so. Instead, she rejected the City Defendants' argument as "neither factually nor legally developed" because the City Defendants had not "provide[d] any evidentiary basis for the Court to conclude that Mingo failed to comply with his Rule 26 discovery obligations"

and had not "included any legal authority or analysis in support of their argument."[8]
Docket Item 25 at 4 n.7.

In their objections, the City Defendants continue to insist that Mingo "never
disclosed John Chandler and Clifford Nash as witnesses at any time prior to the filing of
their sworn statements."  Docket Item 26 at 4.  For his part, Mingo appears to dispute
this.  *See* Docket Item 28 at 3 (maintaining that Mingo "put the [d]efendants on notice
that he would be conducting an investigation to ascertain the identities of [] witnesses"
and "followed up by providing the [d]efendants with all such material.").  So like Judge
Payson, this Court is left with only the assertions of the City Defendants that Mingo
failed to disclose those witnesses and should be precluded from using their affidavits
now.  Accordingly, this Court considers those sworn statements in this decision.[9]

## II.   PERSONAL INVOLVEMENT

The Court next turns to whether Petronella and Baggott were personally involved
in Mingo's arrest and therefore can be held liable for Mingo's false arrest/false
imprisonment claims.  "It is well settled in this Circuit that personal involvement of
defendants in alleged constitutional deprivations is a prerequisite to an award of
damages under § 1983."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127,
135 (2d Cir. 2013) (citation omitted).  A plaintiff also must demonstrate personal

---

[8] Judge Payson also noted that the City Defendants had not "formally moved to
strike or for preclusion under [Federal Rule of Civil Procedure] 37(c)(1)."  Docket Item
25 at 4 n.7.

[9] In any event, even if Mingo had not timely disclosed Chandler and Nash as
witnesses, Judge Payson and this Court could, and this Court would, deem the
affidavits to provide disclosure and permit that late disclosure.

involvement for a false arrest claim under New York law.  *See Levantino v. Skala*, 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014) ("[W]ith regard to the proposed claims under New York state law, personal involvement on the part of the defendant is also a prerequisite to liability for false arrest . . . .").

The City Defendants contend that "[t]he admissible record demonstrates that [Mingo] was already handcuffed and in the back of a police patrol vehicle when Petronella and [Baggott] arrived" and that "only Augustyn made the decision and ultimately arrested [Mingo]."  Docket Item 26 at 7.  But as explained below, the question of precisely when Mingo was arrested is subject to dispute.  Moreover, as Mingo notes in his response to the City Defendants' statement of material facts, Augustyn's paperwork indicated that Petronella and Baggott "assisted with [the] investigation *and arrest*" of Mingo.  Docket Item 21-7 at 1 (capitalization removed and emphasis added); Docket Item 21-1 at ¶ 15; *see also* Docket Item 25 at 32 (R&R) ("At best, the record shows that Augustyn, Petronella, and [Baggott] participated in Mingo's arrest."  (citing Docket Item 27-1 at 1)).  And the sworn statements submitted by Mingo with his opposition papers suggest that witnesses spoke to more than one officer at the scene. *See* Docket Item 21-4 (stating that "the security guard gave the officers falsified [information]" and that "[t]wo other wom[e]n and I tried to explain to the police that Mr. Mingo was innocent and that there was video footage available but the arresting officers . . . proceeded to arrest Mr. Mingo").

On this record, this Court cannot conclude as a matter of law that Baggott and Petronella played no role in Mingo's arrest.  And for that reason, the City Defendants' objection to the R&R on this score fails.

III.    **PROBABLE CAUSE**

Judge Payson also concluded that Mingo had raised a disputed issue of material

fact as to whether his arrest and the charges against him were supported by probable

cause, which would defeat his false arrest/false imprisonment and malicious

prosecution claims, or arguable probable cause, which would shield Augustyn,

Petronella, and Baggott from liability on the ground of qualified immunity.[10]  *See* Docket

Item 25 at 19-30.  The City Defendants argue that this was error.[11]   *See* Docket Item 26

at 4-7.  Again, this Court agrees with Judge Payson.

### A.    **False Arrest/False Imprisonment**

"A [section] 1983 claim for false arrest, resting on the Fourth Amendment right of

an individual to be free from unreasonable seizures, including arrest without probable

---

[10] The Court "notes that the doctrine of qualified immunity is generally understood to only protect government officials from federal, not state, causes of action." *See Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 325 (W.D.N.Y. 2018) (alterations, citation, and internal quotation marks omitted).  "Although 'a similar doctrine exists under New York common[ ]law,'" the City Defendants "have failed to explicitly raise this argument" here.  *See id.* (citation omitted) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007)).   In any event, "as is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his actions." *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009); *see also id.* ("The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with reference[] to the state law and the state, not the federal, constitution.").

[11] The City Defendants moved for judgment on the pleadings on Mingo's state law claims on the ground that Mingo's amended complaint did not allege that he complied with state law notice of claim requirements.  *See* Docket Item 17-1 at 7-8. Judge Payson rejected that argument in part and concluded that Mingo's state law false arrest/false imprisonment and malicious prosecution claims survived because of disputes over probable cause.  *See* Docket Item 25 at 35-39 & n.24.  Because the City Defendants contend that Judge Payson erred only in finding a question of fact as to probable cause or arguable probable cause, this Court limits its analysis to that question.

cause, is substantially the same as a claim for false arrest under New York law." [12]

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted); *see also Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021).  "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'"  *Ashley*, 992 F.3d at 136 (alterations omitted) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)).  Privilege includes an arrest made with probable cause.  *See id.* ("Probable cause to arrest is a complete defense to an action for false arrest.").

"Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citation omitted).  And "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."  *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

The City Defendants first argue that "Augustyn's act of separating [Mingo] from Bailey and handcuffing [Mingo] . . . amounted to an investigatory detention" and not an arrest.  Docket Item 26 at 6.  Because the question of "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the

---

[12] Like Judge Payson, this Court addresses Mingo's false imprisonment/false arrest claims together.  *See Jenkins*, 478 F.3d at 88 n.10 ("False arrest is simply false imprisonment accomplished by means of an unlawful arrest.  False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest."  (citation and internal quotation marks omitted)).

arresting officer *at the time of the arrest*," the Court addresses this contention first.  *See*

*Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (emphasis added) (citation

omitted).

Although the City Defendants continue to press the same argument they raised

to Judge Payson, *see* Docket Item 22 at 7, Judge Payson correctly concluded that

"there exists a reasonable question whether Augustyn's initial encounter with Mingo

rose to the level of an arrest."  Docket Item 25 at 17.  Shortly after arriving at Tim

Hortons, Augustyn placed Mingo in handcuffs and Mingo was moved to a police car

outside.  Docket Item 17-11 at ¶ 9; Docket Item 21-1 at ¶ 9; Docket Item 17-5 at ¶ 8.  As

Judge Payson noted, "the Second Circuit has stated that 'handcuffing is ordinarily not

incident to a *Terry* stop, and tends to show that a stop has ripened into an arrest.'"

Docket Item 25 at 15-16 (alteration omitted) (quoting *Grice v. McVeigh*, 873 F.3d 162,

167 (2d Cir. 2017)).  And as Judge Payson accurately observed, the record does not

suggest that Mingo was handcuffed due to "unusual circumstances" that would

otherwise show that this stop had not "ripened into an arrest."  *See id.* at 16.  Judge

Payson therefore correctly concluded that Augustyn's initial encounter may well not

have been an investigative stop—in other words, that the Court cannot make that

determination as a matter of law.  *See Vanderwoude v. City of New York*, 2014 WL

2592457, at *10 (S.D.N.Y. June 10, 2014) ("An investigative detention amounts to an

arrest under the Fourth Amendment if, 'in view of all the circumstances surrounding the

incident, a reasonable person would have believed that he was not free to leave.'"

(quoting *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)).

The dispute over precisely when Mingo was arrested may well be enough to withstand the City Defendants' motion for summary judgment on Mingo's false arrest/false imprisonment claims.  *See* Docket Item 25 at 17-18; *see also Vanderwoude*, 2014 WL 2592457, at *12 (finding that dispute over when the plaintiff was arrested presented a "factual question[] ill-suited for summary judgment").  Regardless, the parties' dispute over what Augustyn knew at the time of his encounter with Mingo—and therefore whether Mingo's arrest was supported by probable cause—precludes summary judgment now.

As Judge Payson noted, "there is a genuine issue of material fact as to whether Augustyn became aware of facts during his investigation that supported Mingo's claim of self-defense."  Docket Item 25 at 19.  The City Defendants maintain that "the arrest and criminal charges initiated against [Mingo] were privileged" because "Bailey reported to Officer Augustyn that [Mingo] assaulted and harassed him" and "[o]ther witnesses as well as a short video appeared to confirm Bailey's report."[13]  Docket Item 26 at 6.  But Mingo contends that he and "numerous witnesses . . . told Officer Augustyn that he was arresting the wrong guy, and that Bailey had assaulted [him]" first rather than the other

---

[13] The City Defendants contend that "[c]ontrary to the findings of the R&R, the record does reveal what witnesses told Officer Augustyn."  Docket Item 26 at 6 (citation omitted).  But while the affidavits cited by the City Defendants shed some light on what witnesses told Augustyn at the scene, they are silent about whether Mingo's account is true.  As Judge Payson noted, Augustyn's affidavit reveals only what Bailey said to Augustyn and what other witnesses *did not say*—that is, that *no* "*witness[es] state[d] that [Mingo] was not the initial aggressor* in the altercation."  Docket Item 17-5 at ¶¶ 9-10 (emphasis added).  Moreover, while Petronella states that he "overheard [a witness] state in sum and substance 'that man's got to go to jail,'" Petronella's affidavit does not clarify who the witness meant by "that man."  *See* Docket Item 17-6 at ¶ 8.  By Mingo's account, this witness told Augustyn that Bailey was the initial aggressor.  *See* Docket Item 21-1 at ¶¶ 9-10.

way around.  Docket Item 21-6 at ¶ 5; *see also* Docket Item 21-3 ("I saw a lady talking

to the officer telling them [were] ta[]king the wrong man to jail."); Docket Item 21-4 ("Two

other wom[e]n and I tried to explain to the police that Mr. Mingo was innocent and that

there was video footage available but the arresting officers . . . proceed[ed] to arrest Mr.

Mingo.").

      In other words, the parties dispute whether Augustyn was aware of facts

suggesting that Mingo acted only in self-defense but arrested him anyway.  While an

officer need not "investigate exculpatory defenses offered by the person being arrested

or [] assess the credibility of unverified claims of justification before making an arrest,"

he cannot "deliberately disregard facts known to him which establish justification."

*Jocks*, 316 F.3d at 136.  Here, the record suggests that Augustyn may well have been

told by bystanders that Mingo simply was defending himself.  And that disputed fact

precludes this Court from concluding as a matter of law that Mingo's arrest for

harassment or assault was supported by probable cause. [14]  *See Balde v. Rickford*,

2019 WL 2225397, at *6 & n.6 (S.D.N.Y. May 23, 2019) (finding a "material issue of

fact" as to whether the officer "should have known that [the plaintiff] was acting in self-

---

[14] As Judge Payson also correctly concluded, factual issues remain as to
whether Mingo's arrest for trespass was supported by probable cause.  *See* Docket
Item 25 at 22-23.  For example, the City Defendants do not argue in their objections that
Bailey "was an 'authorized person' to act" on behalf of the Tim Hortons.  *See id.* (citing
N.Y. Penal Law § 140.00(5) ("A person who, regardless of his intent, enters or remains
in or upon premises which are at the time open to the public does so with license and
privilege unless he defies a lawful order not to enter or remain, personally
communicated to him by the owner of such premises or other authorized person.")).  And
as Judge Payson noted, any argument that Augustyn had probable cause to arrest
Mingo cannot be based on facts learned after Mingo's arrest.  *See* Docket Item 25 at 21
n.15.

defense" and therefore whether there was probable cause to "arrest [the plaintiff] for harassment in the second degree" and "assault in the second degree").[15]

That same dispute likewise precludes this Court from concluding that Mingo's arrest was supported by "arguable probable cause," which would entitle Augustyn, Petronella, and Baggott to qualified immunity as a matter of law.  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (citation omitted).  As noted above and in the R&R, there are material disputes over when Mingo was arrested and the scope of the officers' investigation prior to Mingo's arrest.  Those very disputes about whether there was probable cause for Mingo's arrest likewise make summary judgment on qualified immunity inappropriate here.  *See* Docket Item 25 at 24 (citing *Sankar v. City of New York*, 867 F. Supp. 2d 297, 307 (E.D.N.Y. 2012)).

For all those reasons, this Court agrees with Judge Payson that Mingo's section 1983 and state law false arrest/false imprisonment claims may proceed.

### B.    Malicious Prosecution

The same dispute over probable cause also supports Mingo's malicious prosecution claims against Augustyn.  "To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: '(1) the commencement or

---

[15] As explained above, the record is unclear as to Petronella's and Baggott's involvement in the investigation and Mingo's arrest.  So this Court cannot conclude that their disputed role in arresting Mingo was supported by probable cause, which itself is disputed.

continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'"[16]  *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195, 734 N.E.2d 750, 752 (2000)).  And "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment."  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997).

Here, as Judge Payson explained, Mingo has raised a material dispute about whether Augustyn had probable cause to charge Mingo.  That same dispute likewise prevents this Court from concluding that Mingo cannot establish that he has shown "the absence of probable cause for the criminal proceeding" and "actual malice."  *See Kee*, 12 F.4th at 162; *see also id.* at 166 ("Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  (alteration omitted) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)).

The dispute about whether Mingo's arrest and charges were supported by probable cause similarly prevents this Court from concluding that Augustyn is shielded by qualified immunity.  "A police officer has qualified immunity from a malicious

---

[16] A claimant bringing a section 1983 malicious prosecution claim also must show "a sufficient post-arraignment liberty restraint."  *See Rohman v. N.Y.C. Transit Auth. (NYCTA)*,  215 F.3d 208, 215 (2d Cir. 2000).  In addition, to establish favorable termination for a malicious prosecution claim brought under section 1983, a claimant "must [] show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence."  *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018).  The City Defendants do not argue in their objections that Mingo's section 1983 malicious prosecution claim founders on either of these requirements.

prosecution claim if the officer had 'arguable probable cause' to charge the plaintiff with the crimes at issue." *See Tompkins v. City of New York*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) (citing *Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order)). Because this Court agrees that Mingo has identified genuine issues of fact about whether the charges against him were supported by probable cause, this Court concludes that Augustyn is not entitled to qualified immunity for Mingo's malicious prosecution claim at this stage. *See Mohr v. City of New York*, 2013 WL 5988948, at *9 (S.D.N.Y. Nov. 12, 2013) (declining to grant summary judgment on qualified immunity where "[t]he [c]ourt cannot determine . . . as a matter of law[] that it was objectively reasonable for the officers to find probable cause to arrest or prosecute [the plaintiff], or that reasonable officers could disagree about whether or not the probable cause test was met in either instance").

This Court therefore accepts and adopts Judge Payson's recommendation that Mingo's section 1983 and state law malicious prosecution claims against Augustyn may proceed.

## IV.    SECTION 1981 CLAIM

Finally, the City Defendants contend that Judge Payson "erred in not entering summary judgment [on Mingo's] section 1981 claim[]." Docket Item 26 at 7 (capitalization removed). Judge Payson declined to dismiss Mingo's section 1981 claim because the City Defendants "d[id] not address [Mingo's] [s]ection 1981 claim in their initial motion papers" and because she declined to "construe their motion to request dismissal of that claim." Docket Item 25 at 33 n.20.

The City Defendants concede that they "did not make any specific arguments" about Mingo's section 1981 claim in their motions for summary judgment and judgment on the pleadings.  Docket Item 26 at 8.  They nevertheless maintain that dismissal is appropriate because they "moved to dismiss all claims" and "[t]he undisputed material facts demonstrate that the City Defendants are entitled to summary judgment" on Mingo's section 1981 claim.  *Id.*  And they may well be substantively correct.[17]

But as the First Circuit has observed, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).  The City Defendants mentioned Mingo's section 1981 claim only once in their motion papers—in their recitation of Mingo's claims, *see* Docket Item 17-1 at 3—but they otherwise failed to address it.  *See id.*; Docket Item 22.  And the City Defendants offer no specific arguments now as to why Mingo's section 1981 claim should be dismissed.  This Court therefore denies the City Defendants' motion for summary judgment on Mingo's section 1981 claim without prejudice to the refiling of a renewed motion.

---

[17] Although the Court declines to pass on the merits of Mingo's section 1981 claim now, it notes that the Second Circuit has "held that [section] 1981 does not confer a private right of action against state actors because 42 U.S.C. § 1983 already contains such a remedy."  *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 F. App'x 536, 539 n.1 (2d Cir. 2020) (summary order) (citing *Duplan v. City of New York*, 888 F.3d 612, 620-21 (2d Cir. 2018)).

## **CONCLUSION**

For the reasons stated above and in the R&R, the City Defendants' motions for summary judgment and for judgment on the pleadings, Docket Item 17, are GRANTED in part and DENIED in part.  More specifically, the City Defendants' motions are DENIED as to Mingo's section 1983 and state law false arrest/false imprisonment claims against Augustyn, Petronella, and Baggott, and his section 1983 and state law malicious prosecution claims against Augustyn.  Their motion for summary judgment is DENIED without prejudice as to Mingo's section 1981 claim.  And their motions otherwise are GRANTED, and Mingo's remaining claims are dismissed.  The Clerk of the Court shall terminate City of Buffalo Peace Officer John Doe as a party to this action.  The case is referred back to Judge Payson for further proceedings consistent with the original referral order of April 17, 2019, Docket Item 8.

SO ORDERED.

Dated:        January 26, 2022
             Buffalo, New York


                             _/s/ Lawrence J. Vilardo_
                             LAWRENCE J. VILARDO
                             UNITED STATES DISTRICT JUDGE